# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 30, 2001

## STATE OF TENNESSEE v. ROBBIE R. BAILEY

**Direct Appeal from the Criminal Court for Washington County**
**No. 26013     Robert E. Cupp, Judge**

_____

**No. E2001-00210-CCA-R3-CD**
**November 29, 2001**
_____

The Appellant, Robbie R. Bailey, was indicted by a Washington County Grand Jury for one count of driving under the influence, fourth offense, one count of driving on a revoked license, and two counts of vehicular assault. On December 1, 2000, Bailey pled guilty to two counts of vehicular assault and one count of driving on a revoked license. After a sentencing hearing on January 10, 2001, the trial court sentenced Bailey, as a range I standard offender, to the maximum term of four years on each count of vehicular assault and ordered that the sentences be served consecutively in the Department of Correction.

On appeal, Bailey raises the following issues for our review: (1) whether the sentences imposed for vehicular assault were excessive; and (2) whether the trial court erred by denying Bailey's request for a non incarcerative alternative sentence. After review, we find no reversible error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, J.J., joined.

Steve McEwen, Mountain City, Tennessee, and David F. Bautista, District Public Defender, Johnson City, Tennessee, attorney for the Appellant, Robbie R. Bailey.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Steve Finney, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Factual Background

On the evening of March 4, 2000, Steve Clayton, a third-year medical student[1] in the East Tennessee State University medical program, and his girlfriend, Kara Kuntz, a junior pre-med student at East Tennessee State University, were returning from the grocery store when they were struck head-on by a pick-up truck driven by the Appellant. Officer Larry Williams, of the Johnson City Police Department, testified that the Appellant drove his truck approximately 2 ½ feet across the center line directly into the path of the 1998 Honda Civic driven by Clayton, pushing Clayton's vehicle approximately 70 feet across another lane of traffic before it came to rest in a ditch. Officer Williams testified that the Appellant did not have his headlights on at the time of the collision and that the Appellant's blood alcohol level was .228 percent. Officer Williams also determined that the Appellant was traveling 55 mph in a 30 mph zone within the city limits.

Clayton suffered various injuries as a result of the collision, including fractures to the right radius [forearm], a partial ACL tear to his left knee, and various lacerations to his head and hands. Two surgeries were required to reduce the arm fracture through pin placement. The damage to Clayton's left knee also required various MRI's, drainage and the injection of steroids. In addition to his physical injuries, Clayton suffered a two-month delay in his residency and a monetary loss of approximately $28,000.

Clayton's passenger, Ms. Kuntz, faired less favorably, with the most significant injury being to her head. This injury resulted in permanent brain damage. At sentencing, Ms. Kuntz's injuries were described as follows:

> Mostly she had bled into her frontal lobes, and she had what they call an intraparenchymal bleed as well as a contrecoup injury . . . She bled into the front part of [her] brain which is known to control centers for personality, memory, and knowledge - socially appropriate behavior I guess is the best way to put it - as well as various other bleeds. And then she damaged the back part of her brain that controls your ability to walk and initiate walking . . . When you walk you don't have to think about taking a step or keeping your balance because that part of your brain constantly adjusts. Well, she had injured it and [it] just made all types of coordinated movement like that very, very difficult. She [had] several other injuries - the biggest injury by far was . . . the brain injury . . . she had a . . . fracture . . . in her right tibia. It's called a tibea plateau fracture . . . but basically she had shattered the main bone of the lower leg and actually had free floating bones and stuff in there. And the medical treatment required [doctors] to go in and actually put an external fixator in

---

[1]On the date of the sentencing hearing, Dr. Clayton had received his medical degree and was in his first year of residency.

there [which] runs wires in to kind of push all the bones together so they could heal appropriately. And for one reason or another, either during the accident or as a result of the medical treatment - there's a nerve that runs close to where they had to go in to fix those bones. And she has since . . . sustained what we call foot drop or inability to lift her foot up like this . . . She also received a patellar fracture on her left side as well as multiple fractures in her left hand. She had, once again, a fracture of one of the metacarpals in her left hand which the orthopedic surgeon just said basically had [been] just totally . . . for lack of a better word, smushed, I mean, just totally destroyed . . . In addition to this, she also received a fracture of her left arm as well.

Ms. Kuntz spent a total of 77 days in the hospital and in rehabilitation facilities. In addition to her physical injuries, Kara's father estimated that their family had incurred a monetary loss of $300,000 to $400,000.

Prior the collision, Ms. Kuntz was working to complete her undergraduate degree and had received early acceptance into the East Tennessee State University medical program. At trial, Ms. Kuntz's father described her prior to the collision and the effect the collision has had on their lives:

I would like to tell you about Kara. Kara is the perfect daughter. Beginning in elementary school, Kara was always an overachiever. She competed and won trophies and ribbons in math, art, county fairs and many other competitions. She took dance and music lessons for years. Kara seldom received a grade below an A in all subjects and she rarely missed a day of school.

Throughout middle school, Kara continued to excel in all subjects. She cluttered our home with materials for science fair projects and the Gifted and Talented Program. Kara became very active in volunteer work.

When Kara entered high school, we thought she had done it all, but this was only the beginning. Kara received straight A's throughout high school and was on the Principal's List for all four years. She continued to receive award after award for her academic achievements. She was a member of the high school marching and concert bands. She volunteered at the Children's Center for abused and neglected children and continued to do so on her summer breaks from college. She faithfully volunteered for Special Olympics, Christmas in April and too many other events to mention.

Kara completed her high school credit requirements early and took four college courses in her junior and senior years of high school. Kara graduated high school with a 4.5 grade point, scored 32 on her ACT, and 1470 on her SAT exams. Kara was the valedictorian in her class of 400 students. We were proud parents.

Kara was offered over $500,000 in college scholarship funds. She visited at least eight colleges and chose ETSU because the people were friendly and the faculty was very encouraging and supported her meeting her goals. Kara was given a full scholarship and admitted in the pre-medicine program. Kara enjoyed her first two and a half years at ETSU. She continued to excel academically and to do volunteer work in the community. Kara became a sorority member and enjoyed the companionship of her sisters. Together they went dancing, hiking, shopping, and chasing boys. Unfortunately, because of Kara's injuries she can no longer participate in these fun things.

During her sophomore year she met Mr. Clayton and together they planned marriage and a future together. Sadly, due to the traumatic situation [the Appellant] has inflicted on our family, this relationship has been destroyed.

Kara continues to attend rehab and works very hard. Her brain injury has left her with a lifelong short-term memory loss. Her cerebella injury has made it difficult for her to walk because of difficulty balancing. She will need another surgery on her left hand due to crushed bones that have left her hand deformed. Her left arm has been broken and she has drop foot due to the break in her right leg. She has aged 50 years due to destroyed nerves in her entire body. Kara no longer has her beautiful smile that always lit up the room when she walked in . . . Kara will never be the person she was born to be.

At the time of sentencing, Ms. Kuntz had re-entered college on a "trial basis" and was struggling to complete her undergraduate degree by taking only seven hours a semester. Due to the vehicular assault, Kara's father and mother began to lead virtually separate lives. Kara's mother stayed with Kara to help her with "everyday living" and her rehabilitation program, while Kara's father remained in Maryland with their thirteen-year-old daughter. Kara's father testified that he, his wife, and his other daughter had all been profoundly traumatized and psychologically affected by the event.

The Appellant sustained no injuries in the crash. At the time of these offenses, he had three prior DUI convictions and was driving on a suspended license.[2] At sentencing, the Appellant testified that he did remember drinking at home that night, but has no recollection of the event or collision that followed until the ambulance arrived at the scene. He was apologetic, remorseful, and admitted that he has an alcohol abuse problem. The Appellant, age 29 at sentencing, further testified that he had been fully employed since age 18 and was willing to pay restitution to the victims and their families.

---

[2]The Appellant had DUI convictions in the following years: 1993 DUI conviction, 1996 DUI conviction, 1997 DUI conviction. After each conviction, the Appellant successfully completed his probationary period for each of these offenses.

At the close of proof, the trial court sentenced the Appellant to the maximum sentence of four years on each vehicular homicide conviction and ordered that those sentences run consecutively, for an effective sentence of eight years.

## I. Whether The Sentences Imposed Are Excessive

The Appellant argues that the trial court erred by sentencing him to the four-year maximum sentence within the range for each vehicular assault conviction. He contends that the trial court misapplied enhancement factors, failed to apply or properly weigh mitigating factors, and erred in ordering the two vehicular assault convictions to be served consecutively.

The Appellant bears the burden of establishing that the sentence imposed by the trial court was erroneous. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *State v. Boggs*, 932 S.W.2d 467, 473 (Tenn. Crim. App. 1996); *State v. Fletcher*, 805 S.W.2d 785, 786 (Tenn. Crim. App. 1991). In determining whether the Appellant has carried his burden, this court must consider the evidence received at the trial and the sentencing hearing, the pre-sentence report, the principles of sentencing, the arguments of counsel, the nature and characteristics of the offenses, existing mitigating and enhancing factors, statements made by the offender, and the potential for rehabilitation. *Ashby*, 823 S.W.2d at 169; Tenn. Code Ann. § 40-35-210. Furthermore, when a defendant challenges the sentence imposed by the trial court, this court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is only applicable if the record demonstrates that the trial court properly considered relevant sentencing principles. *Ashby*, 823 S.W.2d at 169. With respect to the issue of the length of sentence imposed, we find that the trial court erred in its application of certain enhancement factors. Thus, our review of this issue is conducted without a presumption of correctness pursuant to Tennessee Code Annotated § 40-35-401(d).

The Appellant was convicted of two counts of vehicular assault, both Class D felonies. Tenn. Code Ann. § 39-13-106(a) & (b). "A person commits vehicular assault, who, as the proximate result of the person's intoxication as set forth in § 55-10-401, recklessly causes serious bodily injury to another person by the operation of a motor vehicle." Tenn. Code Ann. § 39-13-106(a). Because the Appellant is a range I standard offender, the range of punishment for a Class D felony is "not less than two (2) years nor more than four (4) years." Tenn. Code Ann. § 40-35-112(a)(4). Furthermore, the presumptive sentence would be the minimum sentence in that range if there are no enhancing or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). If there are both enhancing and mitigating factors present, the trial court must "enhance the sentence within the range as appropriate for the enhancement factors, then reduce the sentence within the range as appropriate for the mitigating factors." Tenn. Code Ann. § 40-35-210(e).

The Appellant's sentence is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for

a net number of years. Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. *Boggs*, 932 S.W.2d at 475. The weight to be afforded mitigating and enhancement factors derives from balancing relative degrees of culpability within the totality of the circumstances of the case involved. *Id.* at 476.

## A. Enhancement Factors

At sentencing the trial court applied four enhancement factors to each of the Appellant's convictions for vehicular assault, namely: (1) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (2) the offense involved more than one victim; (3) the personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great; and (4) the defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(1), (3), (6), & (10).

With respect to enhancement factor (1), Tenn. Code Ann. § 40-35-114(1), we find that the trial court properly applied this factor to both vehicular assault convictions. The Appellant had three prior DUI convictions. As such, the Appellant's past criminal history is more than sufficient to apply this enhancement factor.

With respect to enhancement factor (3), Tenn. Code Ann. § 40-35-114(3), the State concedes that it was error for the trial court to apply this factor. We agree. This court has previously held that enhancement factor (3) may not be applied when the defendant is separately convicted of the offenses charged against each victim. *State v. Williamson*, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995); *State v. Makoka*, 885 S.W.2d 366, 373 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1994)(*overruled on other grounds*); *State v. Lambert*, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987). In the present case, the Appellant was separately charged and convicted of vehicular assault against both victims. Thus, we find that the trial court erred by applying this factor.

With respect to enhancement factor (6), Tenn. Code Ann. § 40-35-114(6), the Appellant argues that the trial court erred in applying this factor because "the personal injuries sustained by the victim being particularly great is an element of vehicular assault." The State again concedes this error with respect to the conviction involving the victim Kuntz. We agree. Enhancement factor (6) is not applicable to this vehicular assault conviction because great personal injuries or its equivalent, serious bodily injury, is an element of the offense. *Williamson,* 919 S.W.2d at 82.

The State does, however, argue that the trial court properly applied enhancement factor (6) to the vehicular assault conviction involving the victim Clayton. Specifically, the State asserts that the loss of Clayton's vehicle, valued at approximately $12,000, is sufficient to support application of factor (6). In *State v. John D. Neblett*, No. 01C01-9805-CC-00231 (Tenn. Crim. App. at Nashville, Sept. 24, 1999), *perm. to appeal denied*, (Tenn., Feb. 14, 2001), this court upheld the trial court's application of enhancement factor (6) where a vehicular assault victim's car was totaled

during the wreck.  In this case, the collision totaled Clayton's vehicle, resulting in property damage of $12,000.  *See* Tenn. Code Ann. § 40-35-114(6).  We conclude that the property damage incurred was particularly great and that the trial court properly applied enhancement factor (6) to the offense involving the victim Clayton.

Finally, the Appellant argues that the trial court erred by applying enhancement factor (10), Tenn. Code Ann. § 40-35-114(10), because "there was no evidence that anyone other than the victims were subject to be injured by the Appellant."  In so applying this factor, the trial court concluded, "his conduct that night not only exposed himself but everybody on the highway to a high risk of human life."  Enhancement factor (10) may be applied in circumstances where individuals other than the victim are in the area of the defendant's criminal conduct and are subject to injury. *State v. Sims*, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995)(*distinguished on other grounds*). Notwithstanding, in *State v. Rhodes*, 917 S.W.2d 708, 714 (Tenn. Crim. App. 1995), this court held that enhancement factor (10) does not apply to vehicular assault where the record does not indicate that any other person was actually threatened by defendant's driving because "vehicular assault [unquestionably] reflects the legislature's appreciation of the substantial risk of and actual degree of harm that results from DUI caused injury."  *Id.*

In the present case, we find that the record sufficiently corroborates the trial court's application of enhancement factor (10).  At the time of the impact, the Appellant had a blood alcohol content of .228 percent, more than twice the legal limit.  We note that the vehicular assaults occurred within the city limits and that the Appellant was traveling 55 mph in a 30 mph zone.  The Appellant remembers nothing about getting into his vehicle and driving on that particular evening.   The Appellant crossed the center line and proceeded into on-coming traffic, colliding head-on with the vehicle driven by Clayton.  Although the record does not specifically list the names of persons on the road that night, we find that the facts of this case sufficiently infer that individuals traveling on this highway were also subject to danger or injury that night.[3] *See State v. Davis Oliver Brown,* No. 03C01-9608-CR-00313 (Tenn. Crim. App. at Knoxville, Dec. 16, 1997), *perm. to appeal denied*, (Tenn. Oct. 12, 1998).  The trial court properly applied enhancement factor (10) to both victims.

## B.  Mitigating Factors

At sentencing, the trial court applied only one mitigating factor: that the Appellant was truly remorseful.  Tenn. Code Ann. § 40-35-113(13).  However, when weighing the enhancing and mitigating factors, the trial court stated that it only afforded this mitigating factor little weight because a defendant's remorse will always occur *after* damage to the victim has been done.  The Appellant argues that the trial court erred by finding this factor and then according it only minimal weight.  Specifically, the Appellant contends that "by this reasoning, this factor would never be entitled to any weight, since logic dictates that [it is only when] the crime has already occurred, and [its] consequences brought about, [that] remorse can be demonstrated."

---

[3]The indictment charged that the Appellant was "operating a motor vehicle on South Roan Street, a public way/premise generally frequented by the public at large."

Again, we note that the process of weighing enhancing factors versus mitigating factors is a matter left to the trial court's sound discretion so long as it complies with the principles and purposes of the 1989 Sentencing Act. In the present case, the trial court expressly noted that it believed the Appellant to be remorseful at sentencing. Nonetheless, after considering the Appellant's three prior DUI convictions, the injuries sustained by the two victims, and the other evidence introduced at sentencing, the trial court found the Appellant's remorse to be of little value or weight in determining the appropriate sentence. Furthermore, the record is devoid of any other actions on the part of the Appellant, prior to sentencing, where he showed or expressed his remorse for the incident. When comparing the enhancing factors found at sentencing versus the Appellant's remorse, we do not find that the trial court abused its discretion by affording this mitigator only slight weight in arriving at the final sentence.

The Appellant also asserts that the trial court erred by failing to give him credit for a stable employment history. Over a ten-year period, the Appellant worked in the electronics field for various employers. Although he worked for several different employers during this period, he contends that he always maintained full-time employment. The Appellant makes no argument as to why his employment history should operate to reduce the length of his sentence. Indeed, we would note that a stable employment history, or the lack thereof, is typically viewed as a factor in determining a defendant's potential for rehabilitation within the context of entitlement to alternative sentencing. As noted by the language of Section 113, in some situations prior employment history, "if appropriate," can be considered as a proper mitigating factor pursuant to Tennessee Code Annotated § 40-35-113(13). Nonetheless, application of this factor, absent a gross abuse of discretion, is a decision which rests with the trial court. Even if we assume that the factor was applicable here, this factor, when compared with the enhancement factors applied, is of such little weight that it would not have affected the determination of the specific sentence imposed.

Lastly, the Appellant argues that the trial court erred by failing to consider his "lengthy" ten-month incarceration at the time of sentencing as a mitigating factor. Again, the Appellant provides no argument or reasoning as to why this fact should be considered as a mitigating factor. Tennessee Code Annotated § 40-35-113(13) provides that, in order for a mitigating factor to apply under this subsection, the factor must be consistent with the purposes of this chapter. We hold that service of pretrial confinement by a defendant is not a factor consistent with the purposes of sentencing mitigation. Thus, the trial court did not err by failing to apply this factor.

In summary, we apply enhancement factors (1) and (10) to the vehicular assault conviction involving Ms. Kuntz. With respect to the vehicular assault conviction involving the victim Clayton, we apply enhancement factors (1), (6), and (10). Mitigating factor (1) is also applied to both victims. After *de novo* review, we conclude that four-year sentences on each count of vehicular assault are appropriate sentences in this case.

## C. Consecutive Sentencing

The Appellant next argues that the trial court erred by ordering his two convictions for vehicular assault to run consecutively to one another, for an effective sentence of eight years. Specifically, he argues that "he is not a dangerous offender based upon this one reckless act of crossing into the opposite side of the road, when there was not proof that this was a highly traveled roadway, or that [his] intoxication caused him to drive recklessly prior to swerving over and striking Mr. Clayton's vehicle." The Appellant also argues that an extended sentence was not necessary to protect the public because his three prior DUI convictions were misdemeanors and not crimes of violence. Thus, the Appellant contends that his sentences for vehicular assault should be served concurrently.

With reference to the particular facts of this case, Tennessee Code Annotated § 40-35-115(b)(4) provides that the court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> (4)    The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is great.

This court's review of the manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d). Following *de novo* review, the presumption of correctness is applied to the trial court's findings relative to the issue of consecutive sentencing. The Appellant bears the burden of proving the impropriety of the consecutive nature of the sentences imposed. *Sentencing Commission Comments*, Tenn. Code Ann. § 40-35-401(d).

Before consecutive sentences can be imposed, the trial court must (1) first determine that one or more of the statutorily enumerated criteria of Tenn. Code Ann. § 40-35-115 exists; and (2) if the defendant is found to be a dangerous offender, find that the aggregate sentence is reasonably related to the severity of the offenses and is necessary to protect the public from further criminal activity of the offender. *State v. Wilkerson*, 905 S.W.2d 933, 937 (Tenn. 1995); *see also State v. Lane*, 3 S.W.3d 456 (Tenn. 1999)(holding *Wilkerson* factors were limited to sentencing of "dangerous offenders"). Notwithstanding proof of these criteria, a sentencing court retains the discretion of imposing consecutive sentences. On appeal, the exercise of the trial court's discretion is afforded great weight, provided the court correctly applied the principles of consecutive sentencing. Moreover, in determining whether the trial court providently exercised its discretion, "the overriding concern" is the fairness of the resulting sentence under all the circumstances.

In the present case, when ordering that the two convictions for vehicular assault be served consecutively, the trial court reasoned in relevant part as follows:

[B]efore consecutive sentence[s] can be imposed, the trial court must, one (1), first determine that one or more of the statutory enumerated criteria [of] 40-35-115 exists. I've done that. It does. Two (2), "If the defendant is found to be a dangerous offender while the aggregate sentence is reasonably related to the severity of the offenses and is necessary to protect the public from further criminal activity." And it goes on to tell us consecutive sentences are imposed upon dangerous offenders to protect society against offenders who commit aggravated crimes that pose a high risk to human life. That's exactly what this case is about. His conduct that night not only exposed himself but everybody on that highway to a high risk of human life . . . He sucked up that alcohol and chose to get in a vehicle. He knew what the consequences of that were. He didn't care because the alcohol had taken away his ability to reason that. But that was voluntary, taking of that alcohol. This Court finds that the definitions in *Wilkerson* have been met and the Court does find that he is a dangerous offender. That's evident from all of the facts in this case.

In this case, the record clearly supports the trial court's finding that the Appellant is a dangerous offender. The Appellant has repeatedly endangered the lives of other motorists by persistently committing the offense of DUI. Indeed, this court has previously held that a defendant with multiple DUI convictions "may be classified as a 'dangerous offender' for whom consecutive sentencing is appropriate." *State v. Bobby J. Young,* No. M1998-00402-CCA-R3-CD (Tenn. Crim. App. at Nashville, Dec. 15, 1999), *perm. to appeal denied,* (Tenn., July 17, 2000)(citing *State v. Carl E. Campen,* No. 01C01-9512-CC-00433 (Tenn. Crim. App. at Nashville, Oct. 24, 1997), *perm. to appeal denied,* (Tenn., Sept. 21, 1998)); *State v. Anthony Raymond Bell*, No. 03C01-9503-CR-00070 (Tenn. Crim. App. at Knoxville, Mar. 11, 1996), *perm. to appeal denied*, (Tenn. Sept. 3, 1996). We further find that a consecutive sentence is necessary to protect society from the Appellant's criminal conduct. The Appellant has had three prior DUI convictions and, at the time of these crimes, was driving on a revoked license. Notwithstanding, the Appellant again chose to drive in a highly intoxicated state, thereby demonstrating his lack of concern for his alcohol problems or the safety of others. Moreover, it is obvious that his prior lenient punishments did nothing to deter his conduct. Accordingly, we find that the aggregated sentence imposed was reasonably related to the severity of the offenses. Thus, the imposition of consecutive sentences was not error.

## II. Probation/Alternative Sentencing

The Appellant argues that the trial court erred by not finding him eligible for probation, split-confinement or placement in Community Corrections. The determination of whether the Appellant is entitled to an alternative sentence and whether the Appellant is entitled to full probation are different inquiries. *Boggs*, 932 S.W.2d at 477. Where a defendant is entitled to the statutory presumption of alternative sentencing, the State has the burden of overcoming the presumption with evidence to the contrary. *State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995)(*overruled on other grounds*). "Conversely, the defendant has the burden of establishing [his] suitability for total probation, even if the defendant is entitled to the statutory presumption of alternative sentencing." *Id.*; *Boggs,* 932 S.W.2d at 477. Furthermore, we must review the trial

court's sentence *de novo* with a general presumption of correctness. *Ashby*, 823 S.W.2d at 168; Tenn. Code Ann. § 40-35-401(d). Again, with respect to alternative sentencing, this presumption applies as the record demonstrates that the trial court properly considered relevant sentencing principles. *Ashby*, 823 S.W.2d at 168; Tenn. Code Ann. § 40-35-401(d). We begin our review with the fact that the Appellant is entitled to the statutory presumption of an alternative sentence in view of his convictions for Class D felonies as a range I offender. Tenn. Code Ann. § 40-35-102(6).

### A. Denial of Total Probation

The Appellant, in effect, contends that the trial court erred by denying him total probation. As previously stated, the defendant has the burden of establishing his or her suitability for probation. *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)(*overruled on other grounds*). To meet that burden, the defendant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *Id.* Although not the only factor, the defendant's amenability to rehabilitation is an important consideration when determining his or her suitability for probation. *See Bingham,* 910 S.W.2d at 455; Tenn. Code Ann. § 40-35-103(5). The following criteria, while not controlling, shall also be accorded weight by the sentencing court when deciding the defendant's suitability for probation: (1)the nature and circumstances of the criminal conduct involved, Tenn. Code Ann. § 40-35-210(b)(4); (2) whether a sentence of full probation would unduly depreciate the seriousness of the offense, Tenn. Code Ann. § 40-35-103(1)(B); and (3) whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes, Tenn. Code Ann. § 40-35-103(1)(B). *Bingham*, 910 S.W.2d at 456. Denial of probation may be based solely upon the circumstances of the offense when they are of such a nature as to outweigh all other factors favoring probation. *Fletcher*, 805 S.W.2d at 788-89.

Upon *de novo* review, we find the facts and circumstances of this case to be clearly aggravated. The record reveals a callous indifference by the Appellant for the safety of those traveling the highways of this state. Despite his three prior DUI convictions, the Appellant continued to drive intoxicated and, as a result, seriously injured two victims. Common sense dictates that tragic results are inevitable when a person chooses to drive a vehicle on a public street, at an excessive speed, without lights, at night, and with a blood alcohol content of .22 percent. The trial court also found that the Appellant was not subject to rehabilitation, "He chose to be a drunk in an automobile at least three times prior to this date, was arrested for it, served time for it." We agree with the trial court that total probation in this case would not "subserve the ends of justice" or be in "the best interest of both the public and the defendant." Accordingly, the trial court properly declined to grant the Appellant total probation.

### B. Alternative Sentencing

In the alternative, the Appellant contends that he was at least entitled to the alternative sentence of community corrections or split-confinement. When imposing a sentence of total

confinement, the trial court should base its decision on the considerations listed in Tennessee Code Annotated § 40-35-103(1):

> (A)  Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B)   Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C)  Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

In the present case, the trial court found that total confinement was necessary to provide an effective deterrence to others likely to commit a similar offense. Tenn. Code Ann. § 40-35-103(1)(B).

In *State v. Hooper*, 29 S.W.3d 1, 10-12 (Tenn. 2000), our supreme court specifically enumerated five factors to be considered when deciding whether a need for deterrence is present and whether incarceration is "particularly suited" to achieve that goal:

> (1)  Whether other incidents of the charged offense are increasingly present in the community as a whole;
>
> (2)  Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior;
>
> (3)  Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case;
>
> (4)  Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective;
>
> (5)  Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.

In addition to these factors, the court emphasized that the five factors are neither exhaustive nor conclusive. *Id.* at 12. In other words, the sentencing court may consider additional non-enumerated factors provided that: (1) the sentencing court specifically recites these factors on the record; and (2) these additional factors are supported by "at least some proof." *Id.* Additionally, in concluding the need for deterrence exists, the sentencing court need not find that all five factors are present.

In this case, Officer Williams testified that alcohol-related injuries had increased 7-8% from the previous year. The trial court accredited this testimony by stating, "This officer has worked those type of cases for as long as this court can remember. He knows [the] consequences or the results . . . out there." Accordingly, we conclude, based on Officer Williams' testimony at trial, that the first factor of *Hooper* has been met. Moreover, we note that the Appellant had three DUI convictions prior to the offenses in the present case. It is clear from the record that the Appellant's past DUI convictions were of the same type of criminal conduct as was involved in this case. Apparently, the Appellant gleaned nothing from his prior punishments and continued to disregard the law. Thus, the fifth factor of *Hooper* is also met.

After affording the trial court the presumption of correctness upon *de novo* review, we cannot conclude, under the guidance provided by the supreme court in *Hooper*, that the trial court acted unreasonably in ordering confinement based on grounds of deterrence. Clearly, the record demonstrates that the Appellant's conduct has resulted in tragic consequences to two innocent victims. To prevent further endangerment to the public, a need for deterrence exists as previous efforts to rehabilitate have miserably failed. We affirm the trial court's imposition of total confinement.

## CONCLUSION

Based upon the foregoing reasons, we find no reversible error. Accordingly, the Appellant's consecutive four-year sentences for vehicular assault in the Washington County Criminal Court are affirmed.

_____
DAVID G. HAYES, JUDGE